IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ARTIE JAMES COLLIER           *   CASE No: TO BE FILLED
          Plaintiff           *   IN BY COURT CLERK
     v.                       *
                              *   3:19-CV-002-ECM-CSC
WARDEN P. RICHIE, et al.      *
          Defendant           *

APPLICATION/PETITION FOR WRIT OF HABEAS
CORPUS PURSUANT TO 28 U.S.C. § 2254

Comes now, Artie James Collier, Pro Se, plaintiff in this action to respectfully ask this Honorable Court for an application/petition for a writ of Habeas Corpus against the defendants pursuant to 28 U.S.C. § 2254, and gives the following in support thereof;

FACTS OF THE CASE
PROCEDURAL HISTORY

On 2-6-2015, Artie James Collier, was indicted by a Lee County, Alabama Grand Jury on one count of Unlawful Possession of a Controlled Substance pursuant to Alabama Code §13A-12-212(a)(1), one count Trafficking pursuant to Alabama Code §13A-12-231(3)(a) and one count Unlawful Possession of Marijuana, first degree, pursuant to Alabama Code §13A-12-213(a)(1). On 12-1-2015, "Collier" was convicted

1

by a jury on all three counts. On April 18th, 2016, Collier was sentenced as an habitual offender to 36 months in the penitentiary for the UPOCS, sentenced to life the possibility of parole for the Trafficking charge, and sentenced to 36 months in the penitentiary for UPCM. All sentences were ordered to run concurrent.

On 5-4-2016, Collier filed a notice of appeal to the Alabama Court of Criminal of Appeals (CR-15-136). Colliers main contentions on appeal were as follows: (1) Collier argued that the Circuit Court erred by failing to require the disclosure of the State's confidential informant; (2) Collier argued that the Circuit Court erred by failing to grant his motion to suppress; and (3) Collier argued that by denying his motion for judgment of acquittal. On 2-3-2017, the Court of Criminal Appeals affirmed the conviction.

On 3-28-2017, Collier filed this or rather a RULE 32 POST CONVICTION PETITION FOR RELIEF FROM CONVICTION OR SENTENCE in Lee County Circuit Court (CC-2015-136.60) along with an In Forma Pauperis Declaration (which was denied by the trial court denied on 4-10-2017) Collier paid the $349.00 filing fee to the Circuit Court on 6-30-2017, and the petition was sent to the Lee County District Attorney's office. On 8-22-2017, Collier filed a motion to amend pleading filed on 8-2-2017. On 8-31-2017, the Circuit Court ordered the State to respond to Colliers Rule 32 claims. On 10-15-2017, some eleven days after the Circuit Courts order to respond to Colliers claims in his Rule 32 petition (10-4-2017). On 10-15-2017, the State's attorney filed their response to Colliers claims in

2

Rule 32 petition along with a motion for summary dismissal Collier filed a motion for evidentiary hearing on 10-2-2017 in Lee County Circuit. On 10-24-2017, the Circuit Court issued an order declaring this motion moot. Collier filed his response to the Circuit Court's order declaring this motion moot on 11-2-2018 in Lee County Circuit Court, no action was taken by the Circuit Court on petitioner's response to this order. On 12-5-2018, petitioner filed a motion/petition for an evidentiary hearing on the petitioners response to courts' order that declared his earlier motion for an evidentiary hearing on his Rule 32 claims filed with the court on 10-24-2017. The Circuit Court filed no action on this motion, and on 4-2-2018, the Circuit Court ordered the petitioners' Rule 32 petition filed in the Circuit Court on 3-28-2017 to be summarily dismissed on 4-2-2018. (See "Exhibit A," Court's Order Summarily Dismissing Petitioner's Rule 32 petition and the claims raised in it.)

On 5-9-2018, Collier filed a motion to amend his Rule 32 petition, the Circuit Court took no action on this motion. Petitioner Collier filed an appeal with the Circuit Court Clerk of Lee County to appeal the Courts order denying and summarily dismissing Collier's Rule 32 petition and each claim Collier raised in his Rule 32 petition. This appeal was taken to the Alabama Court of Criminal Appeals. Docketing Statement/Reporters Transcript Order for said appeal was filed by Collier along with his notice of appeal to the Lee County Circuit Clerk's office on 5-10-2018. Collier's appeal was assigned Case No. CR-17-0285 in the Alabama

3

Collier notes for the courts record that Collier's direct appeal to the Alabama Court of Criminal Appeals, Collier v. State (Case No. CR-15-0880), 242 So.3d 226 (Ala. Crim. App. 2017) was affirmed in an unpublished memorandum issued on 2-3-2017 by the Alabama Court of Criminal Appeals. Collier, in this direct appeal, attacked his convictions and sentences of life imprisonment for the trafficking conviction and 36 months for each of the possession charges and convictions. On March 13, 2017, Collier filed his first Rule 32 petition that raised three claims that centered around his allegation that the warrant for his arrest was invalid because, he said, it was not signed by a judge or magistrate. Collier alleged: (1) that his trial counsel was ineffective for not objecting to the allegedly invalid arrest warrant (2) that the allegedly invalid arrest warrant deprived the trial court of jurisdiction to render the judgments or to impose the sentences; and (3) that the allegedly invalid arrest warrant constituted newly discovered material facts entitling him to a new trial. Collier also alleged in his petition: (4) that his trial counsel was ineffective for not requesting disclosure of the recording device that was used to record Collier's sale of cocaine to the confidential informant. On 8-16-2017, Collier filed an amendment to his petition,

4

Collier has indeed exhausted every available state remedy pursuant to 28 U.S.C. § 2254(b)(1)(A) (2000) and § 2254(c). Collier's direct appeal, filing of R.32 post-conviction relief petition, direct appeal of dismissal of R.32 petition, application for rehearing and petition for writ of certiorari to state appeals court and Supreme Court of Alabama satisfy the requirements of these statues. Therefore, Collier has proceeded in this cause in the manner required and therefore, this Honorable Court now has the jurisdiction to grant habeas corpus relief to Collier in this cause.

ARGUMENT IN SUPPORT OF GROUND #1:

The issue in ground #1 is whether Collier was subjected to an illegal search of his residence on 1-17-2014 that was conducted by the Opelika Police Dept. ("OPD") Narcotics Unit, Detective Stanley Garrett being the units lead investigator on this particular case at the time. All of the police narratives, trial and appeal records indicate that the warrant to search Collier's residence was the product of an alledged controlled drug buy, conducted at Collier's residence sometime between 1-11-2014 and 1-13-2014, by a confidential informant ("CI") working for the "OPD" under the designation "informant no. 798". As a result of the discovery of illegal narcotics pursuant to the search warrant, Collier was arrested on 1-17-2014 on charges of: a) unlawful possession of controlled substances; b) unlawful possession of marijuna; c) and trafficking oxycodone, a controlled substance (the result of 28 (twenty eight) tablets that contained oxycodone). Collier was indicted on these charges on 2-3-2015, Collier waived formal arraignment and entered pleas of NOT GUILTY on all counts. Collier notes for this court, Collier was never charged with any charge for the supposed/alledged controlled drug buy that led to the search warrant and subsequently the illegal drugs being found in his residence. On 11-15-2015, Collier's atty. filed a motion seeking to have the trial court

5

compel the state to reveal the identity of "CI 798". Collier also filed a motion on this same date to move to suppress the State's drug evidence, on the grounds: that, in light of the fact that both the affidavit supporting the search warrant, and the search warrant itself, incorrectly listed the address to be searched, because these inconsisties prevented the affidavit from supporting probable cause, the drug evidence seized by the State pursuant to the search warrant was due to be suppressed as fruit of the poisonous tree; and, b) that, in light of factual inconsistencies between what "OPD" narcotics Detective Stanley Garrett testified to at the suppression hearing, and what he included in his affidavit in support of the 1-17-2014 search warrant, the drug evidence seized by the state pursuant to the search warrant was due to be suppressed as fruit of the poisonous tree. On 12-1-2015, the trial court held hearings on both of these motions, both motions were denied on this same date, despite the fact that overwhelming evidence presented at this hearing clearly showed by a preponderance of the evidence, that Detective Stanley Garrett ("Garrett") had given false statements, while under oath, in his affidavit supporting the issuance of the search warrant, and that Garrett continued this perjury throughout the trial that resulted in Collier's being found guilty of all charges and being sentenced to 2 (two) 36 month sentences and a LIFE sentence on the trafficking charge. Collier's 4th (Fourth Amendment) amendment right (U.S. Constitution) is applicable to state officials through the Due Process Clause of the 14th amendment (U.S. Constitution) See Wolf v. Colorado, 338 U.S. 25, 27-28 (1949). The 4th amendment provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, SHALL NOT BE VIOLATED, and NO WARRANTS shall issue, but upon probable cause, supported by OATH, or

6

affirmation, and particularly describing the place to be searched, and the persons or things to be seized. The U.S. Supreme Court's ruling in <u>MAPP v. OHIO</u>, 367 U.S. 643, 655 (1961) bars the use of evidence seized in violation of the 4th amendment in state courts. The U.S. Supreme Court has consistently ruled that probable cause for a search warrant may be based on information from a <u>reliable, known informant</u> or information from an independent source, that can be <u>INDEPENDENTLY CORROBORATED by LAW ENFORCEMENT</u>. See <u>DRAPER v. U.S.</u>, 358 U.S. 307, 313 (1959), <u>ILLINOIS V. GATES</u>, 462 U.S. 213, 238 (1983), and <u>U.S. v Zayas-Diaz</u>, 95 F.3d 105, 112 (1st Cir. 1996). The Court noted in all of these decisions that CI's <u>MUST</u> be proven to have a reliable record of providing reliable, truthful information in the past, and the courts <u>always</u> emphasized in each of these decisions the <u>importance of</u> and <u>requirement</u> that the information provided by those CI's <u>MUST BE VERIFIED AND CORROBORATED BY LAW ENFORCEMENT</u>. In the case at bar, the <u>record is silent as to the question of CI 798's reliability</u> of giving or providing LE with reliable, truthful information in the past, more importantly, the records, i.e. supporting search warrant affidavit, and Garrett's sworn testimony during Collier's suppression hearing & trial clearly prove <u>Garrett was untruthful</u> about his corroboration of the CI's information and his supposed monitoring and observation of the alledged "Controlled buy" CI 798 supposedly made from Collier at his residence that led to Garrett obtaining a search warrant for Collier's residence. In Garrett's sworn application & affidavit for the search warrant to search Collier's residence, Det. Garrett gives a "bare bones" deposition, and the information Garrett does provide in this document is untruthful and

7

misleading, Barrett states "he's been reliably informed informed...", the reliability of the informant CI 798, has <u>not</u> been established in this application or in any other proper legal way, which is contrary to the Supreme Courts ruling in <u>Draper</u> and <u>Illinois v. Gates</u>. Barrett continues throughout this affidavit to provide untruthful, misleading and unverified information to the issuing Judge, statements such as "reliable informant", again CI 798's reliability has never been established, CI 798 was given money that was copied and the serial #'s recorded at "OPD",... Barrett doesn't state the purpose of this money..., Barrett states CI 798 was instructed to go to 506 E N Antioch Cir. Opelika, Alabama and make a controlled drug buy from Artie James Collier, alias at the residence, Barrett gave the wrong address of Colliers apt., Barrett states the CI met Collier, alias, at the residence, stating this as fact, but providing the issuing Judge with <u>no</u> supporting evidence no audio, video or recordings of this supposed meet. Barrett then states... "After making the controlled drug buy from Collier, (which implies that Barrett personally witnessed this alledged buy) the CI returned to a pre arranged location and turned the evidence "suspected powder cocaine" over to narcotics officers. The Supreme Court established in <u>Franks v. Delaware</u>, 438 U.S. 154, 165 (1978) "that information supporting probable cause <u>must</u> always be "TRUTHFUL" in the sense that the information put forth is believed or appropriately accepted by the affiant as true". Statements (to determine) that are knowingly false or exhibit a reckless disregard for the truth <u>must</u> not be used by the magistrate to determine probable cause". <u>Also See Fed. R. Crim. P. 41(c)</u>. In the case at bar, it became apparrent that Barrett had knowingly and intentionally given false informa-

8

(while under oath) in his statements on the application and affidavit for Search Warrant in order to obtain the search warrant for Collier's residence. This deception came to light and was proven by Barretts' own sworn testimony at Collier's suppression hearing; Collier has always denied the fact that he sold cocaine to anyone, and Barretts' evidence of that alledged sale to CI 798 fails to establish any evidence supporting the so called "controlled buy" by CI 798, however, the evidence DOES SUPPORT Collier's denial of the alledged sale of cocaine to CI 798. The State's main argument against Collier's motion for the State to be compelled to reveal the identity of CI 798 and his motion to have the evidence (drugs + paraphenalia, etc.) seized as a result of the search warrant that resulted in Collier's charges, conviction and sentences was since Collier wasn't charged for the alledged sale of cocaine to the CI, and the fact that the CI wouldn't be a material witness against Collier at his trial, his (the CI's) identity was irrelevant. The State also argued that Collier's arrest was the result of the drugs seized during the search of his residence, not because of the alledged sale of cocaine to the CI, therefore, the CI's identity and any testimony he/she may give would be irrelevant to Collier's current charges, when in fact, the alledged sale of "suspected" powder cocaine to CI 798 by Collier provided the <u>sole basis</u> upon which the search warrant was obtained to search Collier's residence on 1-17-2014, which produced the illegal drugs that caused Collier to be charged with, convicted of and sentenced to life in prison, so the question is, how could <u>any</u> reasonable trier of fact say that CI 798's identity and testimony be irrelevant to Collier's charges in these cases? The basis of Collier's argument that his 4th amendment

9

constitutional right against illegal searches and seizures is the fact that the search warrant for his residence was obtained (using knowingly) by Detective Barrett who lied while under oath to the issuing Judge/Magistrate, providing false information in the affidavit to support the issuance of the search warrant. Barrett knowingly and willfully gave this false and erroneous information in his sworn affidavit, knowing by doing so he was intentionally violating Collier's constitutional right to be free from illegal searches and seizures of his home, person, papers, etc., and did so with the intent of depriving Collier of his inalienable right to life, liberty and the pursuit of happiness. The following testimony of Barrett @ Collier's December 1st, 2015 Suppression Hearing clearly shows Barrett lied and deceived the Judge/Magistrate in his sworn affidavit to obtain the search warrant for Collier's residence; Note to the Court; the entire opening argument of the suppression hearing from both sides starts on pg. 100 of trial transcript "TT" and those arguments along with testimony from witnesses end on pg. 146 TT. Detective Barrett's sworn testimony concerning the suppression hearing starts on pg. 119 line 15 TT and ends on pg. 140-141 TT. On pg. 120 TT, Barrett acknowledges knowing Collier through prior arrest. Barrett states Collier's previous address, the residence that was searched, the address was wrong on the search warrant. On pg. 121 TT L's 5-25, the state attempts to establish the reliability of the CI, something Barrett failed to do in the search warrant affidavit (SWA), which is required. On pg. 122 TT L. 3-6, the state establishes or attempts to establish that Barrett had CI 708 working with him to make an alledged drug buy from Collier. See TT pg. 122 L. 3-25, the address Barrett gives in this testimony on L 21 is different from address

from the address in Barrett's previous testimony on pg 118-120 TT & pg. 123 TT L 1-25, the state atty (ADA) attempts to establish from Barrett about the procedures and precautions Barrett had taken to ensure the CI didn't already have drugs on him before going on this controlled buy. Barrett assures the ADA (L 1-2) that the CI was searched, however, to what extent Hebb was searched was not established in this testimony, and it was never established in Barrett's "Bare Bones" affidavit to the issuing Judge. On L 5-7, the ADA gets Barrett to state that OPD provided the CI with money to purchase drugs from Collier, the amount is unmentioned. On L 20-21 pg. 123 TT, the ADA asks Barrett, Did you monitor that drug transaction in any way, Barrett answers "I did". L 23, asks how it was monitored? Barrett states on L's 24-25, we were able to listen to the whole conversation. Placed a wire on the CI. Pg 124 L 2-3, Barrett states the CI was wired prior to the alledged purchase. On L 5-6-7, Barrett admits the alledged buy was not audio recorded and states, it's standard policy not to record these transactions. On L 10-12 pg 124 TT, the ADA asks Barrett, So were you able to see, from your position, the CI go into 506-B North Antioch? On L. 13-16 Barrett answers, "We observed the CI GO INTO THE APARTMENT. Once we observed the CI go into the apartment, we go to another location and listen to the recording." Pg 124 L 17-18 Q. Okay. "Did you see the CI ACTUALLY go into the apartment"? L 19, pg 124 TT A. "NO Just up to the apartment". Barrett admits he Never observed the CI go into Collier's apt nor did he observe the CI buy anything from Collier. In fact Barrett cannot truthfully testify that he EVER seen Collier at any time during this "so-called" controlled drug buy.

Instead, Garrett depends on the recording device to make a positive ID of Collier during this alledged controlled buy, but this too fails as seen on pg. 125 L's 4-8, Q: "Are you familiar with the voice of Artie Collier"? L.6-8,pg.125, A: "I know his voice, but I can't say I can listen to it, and say that that's him (Collier) or not." Garrett has admitted under oath that he never actually seen Collier during this alledged controlled buy nor can he positively identify Collier as the person the C.I. is talking to on this recording device, and since there's no audio or visual evidence to prove Collier as the alledged seller of this suspected cocaine, Garrett had NO PROOF Artie Collier sold anything to anyone, therefore Garrett lied under oath to the issuing Judge of the search warrant for Collier's home. Therefore, Collier is entitled to the relief sought in this petition on the aforesaid grounds. Garrett's actions in obtaining the search warrant for Collier's residence violated Collier's 4TH amendment rights against illegal searches and seizures as applied to state officials through the Due Process Clause of the 14TH amendment. See <u>Wolf v. Colorado</u>, 338 U.S. 25, 27-28 (1949). Garrett's untruthful statements in the application and affidavit to obtain the search warrant for Collier's residence were also contrary to the U.S. Supreme Courts ruling in <u>FRANKS v. DELAWARE</u>, 438 U.S. 154, 165 (1978). Based upon these facts Collier's convictions on all charges in this matter should be set aside and vacated, as well as all of Collier's sentences that were imposed by the court as a result of these convictions.

WHEREFORE ALL ABOVE PREMISES CONSIDERED, petitioner prays this Honorable Court will grant him all the relief sought in this petition

12

and all other relief this court may grant in this cause based on current Federal Law.

Collier makes note to this court that he has not submitted arguments in this petition for grounds 2 & 3, but reserves the issues for the record in order that he may at some time petition this court for an order to supplement this petition with the arguments at some time later.

Respectfully Submitted On This The 5TH Day of December 2018.

Respectfully Submitted By:

*Artie Collier*

Artie James Collier - Pro Se
AIS # 191793
Bullock CF
P.O. Box 5107
Union Springs, Alabama
36089

## CERTIFICATE OF SERVICE

I, Artie James Collier, do hereby certify that I have served one original and two copies of the foregoing document on the office of the Clerk, U.S. District Court, Middle District of Alabama, Northern/Eastern Division via U.S. Mail on this the 5th day of December, 2018, properly addressed and with proper postage affixed.

Artie Collier
ARTIE JAMES COLLIER - PRO SE
AIS# 191793
BULLOCK CF
P.O. BOX 5107
Union Springs, Alabama
36089

SWORN AND SUBSCRIBED BEFORE MY HAND ON THIS THE 5th DAY OF December, 2018.

Willie Pd
NOTARY SIGNATURE

AIS# 191793
Bullock CF/II-
P.O. Box 5107
Union Springs, AL
36089

Office of the Clerk
U.S. District Court for
the Middle District of Alabama
One Church Street, Suite B-110
Montgomery, Alabama
36104

U.S. POSTAGE PAID
FCM LG ENV
UNION SPRINGS, AL
36089
DEC 28, 18
AMOUNT
$0.00
R2304H108993-06